UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSH USA, INC., a Delaware corporation; and MARSH & MCLENNAN COMPANIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> CHAD W. KARASAKI, <br><br> Defendant. | CIVIL NO. 08 Civ. 4195 (JGK) <br><br> DECLARATION OF JANET MEI CHI NG |

## DECLARATION OF JANET MEI CHI NG

I, JANET MEI CHI NG, declare:

1. I am a Client Representative with Plaintiff Marsh USA Inc.'s ("Marsh's") Honolulu, Hawaii office.

2. I joined Marsh on July 13, 2005.

3. Since the inception of my employment with Marsh, I have worked in Marsh's insurance brokerage unit, which includes a construction insurance practice.

4. As a Client Representative, my job responsibilities have always included assisting in the solicitation of clients on behalf of Marsh, servicing certain accounts Marsh successfully solicited, and managing the client relationships on the accounts for which I am given responsibility.

4814-9269-8626 1 050293-00013

5. From the time when I joined Marsh through his resignation and subsequent departure from the company in March 2008, Chad W. Karasaki ("Karasaki"), the Head of Marsh's Hawaii office, was the leader of Marsh's insurance brokerage unit.

6. I worked under the supervision of the Client Executive or Client Advisor in charge of a particular account. In cases where the Client Executive was Karasaki, he supervised me directly. In other cases I was under his overall supervision.

7. On March 28, 2008, I learned that Marcus Kim ("Kim"), one of Marsh's Client Executives, had resigned from Marsh to move to Aon, Marsh's principal competitor. On that date, I communicated with Ken Kanehiro ("Kanehiro"), risk consultant for Arcadia Retirement Residence ("Arcadia"), one of Marsh's clients. Kanehiro told me that he had already received a courtesy call from Kim, who used to be in charge of the Arcadia account on behalf of Marsh, advising of his resignation.

8. Few days later, Kanehiro and I spoke again, and he mentioned he received an email from Helen Otani ("Otani") of Aon, advising that Kim had left Marsh and joined Aon; and that if he signed the BOR (Broker of Record letter) which was attached to the email, Kim can continue to service the Arcadia account.

9. On April 2, 2008, I received a telephone call from Phil Luecht ("Luecht") of Aon, who used to be a high-ranking executive of Marsh.

10. Luecht asked me whether I was interested in career opportunity at Aon, or in hearing what Aon had to offer.

11. I answered that I would listen to what they had to offer.

12. Luecht advised that someone from Aon would contact me.

13. On April 4, 2008 I received a telephone call from a woman who said she was from Aon and wanted to make an appointment for April 8, 2008.

14. I said I could only meet after work.

15. The woman said she could not meet that evening because of a previous engagement.

16. This was the first time ever that Aon had contacted me about a job opportunity.

17. On April 8, 2008, Kanehiro, Dave Iwana (a Client Advisor with Marsh) and I met for lunch. During lunch, Kanehiro said he had received a second email from Otani reminding him that Kim is at Aon and asking him to sign the attached BOR in order to have Kim service the Arcadia account. Kanehiro also said the email stated that, since the account was renewed, if he signed the BOR the commissions would stay with Marsh, but Aon would do the servicing.

This declaration is made upon personal knowledge and is filed pursuant to 28 U.S.C. § 1746(2). I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 30, 2008 at Honolulu, Hawaii.

_____
JANET MEI CHI NG

_____
MARSH USA INC. ET AL. V. CHAD W. KARASAKI (SDNY):