UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSH USA INC. and MARSH & MCLENNAN COMPANIES, INC.<br><br>Plaintiffs,<br><br>v.<br><br>CHAD W. KARASAKI<br><br>Defendant. | Case No. 08 Civ. 4195 (JGK)<br><br>ANSWER OF MARSH USA INC. AND MARSH & MCLENNAN COMPANIES, INC. TO DEFENDANT'S COUNTERCLAIMS |

Plaintiffs Marsh USA Inc. and Marsh & McLennan Companies, Inc. (collectively, "Marsh" or "Plaintiffs"), by and through their undersigned attorneys, hereby answer the allegations in Paragraphs 106 through 141 set forth in Defendant's Answer and Counterclaims (the "Counterclaims").

## INTRODUCTION

106. Admits the allegations contained in Paragraph 106 of the Counterclaims.

107. Admits the allegations contained in Paragraph 107 of the Counterclaims. Further answering the allegations contained in Paragraph 107 of the Counterclaims, Marsh alleges that Chad Karasaki ("Karasaki") continued to function in the role of Client Executive for certain Marsh clients from 2003 until he resigned from Marsh.

108. Admits only that Karasaki was promoted to Managing Director in 2003. Denies each and every remaining allegation contained in Paragraph 108 of the Counterclaims.

109. Admits the allegations contained in Paragraph 109 of the Counterclaims.

## CONTRACTS WITH MARSH

110.   Admits only that, on or about November 25, 2003, Karasaki entered into the Marsh USA Inc. Non-Solicitation Agreement for Participants in the Discretionary Bonus Plan (the "Non-Solicitation Agreement") and the Marsh USA Inc. Confidentiality and Ownership Rights Agreement (the "Confidentiality and Ownership Rights Agreement"). Denies each and every other allegation contained in Paragraph 110 of the Counterclaims.

111.   Admits only that, on or about June 27, 2007, Karasaki entered into a Restrictive Covenants Agreement (the "Restrictive Covenants Agreement"). Denies each and every other allegation contained in Paragraph 111 of the Counterclaims.

## RESIGNATION FROM MARSH

112.   Admits the allegations contained in Paragraph 112 of the Counterclaims.

113.   Denies each and every allegation contained in Paragraph 113 of the Counterclaims. Further answering the allegations contained in Paragraph 113 of the Counterclaims, Marsh states that it initially responded to Karasaki's resignation by exploring the possibility of Karasaki remaining with Marsh.

114.   Denies each and every allegation contained in Paragraph 114 of the Counterclaims. Further answering the allegations contained in Paragraph 114 of the Counterclaims, Marsh states that Karasaki chose to leave Marsh's employment.

115.   Admits only that Karasaki submitted a written notice of resignation, dated March 6, 2008, in which he stated that his resignation was to be effective March 20, 2008. Denies each and every remaining allegation contained in Paragraph 115 of the Counterclaims.

116. Admits only that on March 10, 2008, Karasaki met with Mike Kelly and Gregg Carpenter and that, at that meeting, advised them that his decision to resign was final. Denies each and every remaining allegation contained in Paragraph 116 of the Counterclaims.

117. Admits only that Karasaki spoke to a group of Marsh employees at a meeting about his resignation. Denies each and every remaining allegation contained in Paragraph 117 of the Counterclaims.

118. Denies each and every allegation contained in Paragraph 118 of the Counterclaims.

119. Admits only that Karasaki left Marsh's premises on March 10, 2008. Denies each and every remaining allegation contained in Paragraph 119 of the Counterclaims.

120. Denies each and every allegation contained in Paragraph 120 of the Counterclaims, except admits that Mara Malinowsky informed Karasaki that his benefits would cease as of midnight on March 10, 2008.

121. Neither admits nor denies the allegations in the first sentence of Paragraph 121 of the Counterclaims on the grounds that Karasaki's resignation letter is a document that speaks for itself. Denies knowledge or information sufficient to form a belief as to the allegations in the second sentence of Paragraph 121 of the Counterclaims.

122. Admits only that, almost immediately following Karasaki's resignation from Marsh, numerous Marsh clients signed Broker of Record Notices transferring their accounts from Marsh to Aon. Denies each and every remaining allegation contained in Paragraph 122 of the Counterclaims.

123.   Denies each and every allegation contained in Paragraph 123 of the Counterclaims.

124.   Denies each and every allegation contained in Paragraph 124 of the Counterclaims.

125.   Denies each and every allegation contained in Paragraph 125 of the Counterclaims.

126.   Denies each and every allegation contained in Paragraph 126 of the Counterclaims.

## PRESENT ACTION

127.   Admits the allegations contained in Paragraph 127 of the Counterclaims.

128.   Admits only that, on April 15, 2008, Karasaki moved to dismiss or alternatively, to transfer venue of the action that Marsh filed in Hawaii to New York, solely on the grounds of improper venue. Further answering the allegations contained in Paragraph 128 of the Counterclaims, Marsh alleges that Karasaki's motion to dismiss did not address the merits of Marsh's claims set forth in the Hawaii Complaint. Denies each and every remaining allegation contained in Paragraph 128 of the Counterclaims.

129.   Admits only that, on April 22, 2008, without addressing the merits of Marsh's application for relief, the District of Hawaii granted Karasaki's motion to dismiss on improper venue grounds. Denies each and every remaining allegation contained in Paragraph 129 of the Counterclaims.

130.   Admits only that Marsh filed a Complaint against Karasaki on May 2, 2008, and that the Complaint speaks for itself. Denies each and every remaining allegation contained in Paragraph 130 of the Counterclaims.

## FIRST COUNTERCLAIM (DEFAMATION/LIBEL)

131. In response to Paragraph 131 of the Counterclaims, Marsh incorporates herein its responses to Paragraphs 106 through 130 above.

132. Denies each and every allegation contained in Paragraph 132 of the Counterclaims.

133. Denies each and every allegation contained in Paragraph 133 of the Counterclaims.

134. Denies each and every allegation contained in Paragraph 134 of the Counterclaims.

## SECOND COUNTERCLAIM (UNFAIR COMPETITION)

135. In response to Paragraph 135 of the Counterclaims, Marsh incorporates herein its responses to Paragraphs 106 through 134 above.

136. Admits only that, on or about November 25, 2003 and June 27, 2007, Karasaki entered into the Non-Solicitation Agreement and Restrictive Covenants Agreement, respectively. Denies each and every other allegation contained in Paragraph 136 of the Counterclaims.

137. Neither admits nor denies the allegations in Paragraph 137 of the Counterclaims on the grounds that the Non-Solicitation Agreement and Restrictive Covenants Agreement are documents that speak for themselves and that the allegations call for legal conclusions.

138. Neither admits nor denies the allegations in Paragraph 138 of the Counterclaims on the grounds that the Non-Solicitation Agreement and Restrictive

5

Covenants Agreement are documents that speak for themselves and that the allegations call for legal conclusions.

139.   Denies each and every allegation contained in Paragraph 139 of the Counterclaims.

140.   Denies each and every allegation contained in Paragraph 140 of the Counterclaims.

141.   Denies each and every allegation contained in Paragraph 141 of the Counterclaims.

### FIRST AFFIRMATIVIVE DEFENSE

142.   The Counterclaims fail to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

143.   The Counterclaims are barred, in whole or in part, by the doctrine of estoppel.

### THIRD AFFIRMATIVE DEFENSE

144.   The Counterclaims are barred, in whole or in part, to the extent Defendant has not suffered any actual injury or damage as a result of Plaintiffs' conduct.

### FOURTH AFFIRMATIVE DEFENSE

145.   The Counterclaims are barred, in whole or in part, by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

146.   The Counterclaims are barred, in whole or in part, because Karasaki knowingly received direct benefits from the Non-Solicitation Agreement and the

Restrictive Covenants Agreement and is, therefore, bound by, among other things, its provisions.

## SIXTH AFFIRMATIVE DEFENSE

147. The First Counterclaim is barred because the communications upon which the Counterclaim is based contain truthful statements only.

## SEVENTH AFFIRMATIVE DEFENSE

148. The First Counterclaim is barred because Karasaki expressly consented to Marsh's furnishing the communications upon which the Counterclaim is based by entering into the Non-Solicitation Agreement and Restrictive Covenants Agreement with Marsh.

## EIGHTH AFFIRMATIVE DEFENSE

149. The First Counterclaim is barred, in whole or in part, because of the doctrine of qualified privilege.

## NINTH AFFIRMATIVE DEFENSE

150. Marsh reserves the right to assert additional affirmative defenses upon discovery of further information regarding the Counterclaims and upon the development of other relevant information.

**WHEREFORE,** Marsh demands judgment as follows:

A. Dismissing the Counterclaims in their entirety;

B. Enter judgment awarding Marsh its reasonable costs and attorney's fees incurred by Marsh in defending against the Counterclaims; and

C. Grant to Marsh such other and further relief as the Court deems just and appropriate.

DATED this 21st day of July, 2008

*/s/ Gary D. Friedman*
_____
Gary D. Friedman, Esq. (GF 6175)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
gary.friedman@weil.com
david.fertis@weil.com

Nenad Krek, Esq. (NK6300)
CARLSMITH BALL LLP
American Savings Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
(808) 523-2533 (v)
(808) 523-0842 (f)
nk@carlsmith.com

Attorneys for Plaintiffs
MARSH USA INC. and MARSH &
MCLENNAN COMPANIES, INC.